UNITED STATES DISTRICT COURT
For the Northern District of California

1
2
3
4
5
6
7

8          UNITED STATES  DISTRICT COURT

9             Northern District of California

10               Oakland Division

11  ALLIANZ LIFE INS.,                          No. C 11-04404 LB

12              Plaintiff,          **ORDER GRANTING PLAINTIFF**
       v.                           **ALLIANZ LIFE INSURANCE**
13                                  **COMPANY'S MOTION FOR**
    RUTH INGER AGORIO, *et al.*     **DISCHARGE OF STAKEHOLDER IN**
14                                  **INTERPLEDER AND RECOVERY OF**
              Defendants.          **ATTORNEYS' FEES**
15  _____/

16                                  [ECF No. 25]

17              **I. INTRODUCTION**

18      Allianz Life Insurance Company ("Plaintiff") brings this Motion for Discharge of Stakeholder in

19  Interpleader Action and for Recovery of Attorneys' Fees Incurred.  ECF No. 25 at 1.[1]  Ruth Inger

20  Agorio, *et al.* ("Defendants") filed an Opposition to Plaintiff's motion on December 21, 2011, (ECF

21  No. 26), and Plaintiff filed their Reply on January 5, 2012 (ECF No. 27).  The court grants

22  Plaintiff's Motion for Discharge of Stakeholder in Interpleader because Defendants do not contest

23  that Plaintiff is a neutral stakeholder having no claim to the insurance policy which is the subject

24  matter of this action and Plaintiff potentially faced adverse, competing claims.  The court grants

25  Plaintiff's request for recovery of attorneys' fees in a reduced amount because the requested amount

26  is unreasonable and Plaintiff did not submit sufficient information to substantiate the requested

27

28      [1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page
    number at the top of the document, not the pages at the bottom.

C 11-04404 LB
ORDER

UNITED STATES DISTRICT COURT
For the Northern District of California

1   amount.

2   ## II.  BACKGROUND FACTS

3       On or about March 19, 1990, Plaintiff issued a life insurance policy numbered 002783969

4   (thJanuary 23, 2012e "Policy") insuring Enrique Agorio ("Decedent").  Complaint, ECF No. 1 at 3,

5   ¶ 10.  The Policy had a death benefit of $600,000.00.  *Id.*  Initially, the Policy designated Decedent

6   as the Policy owner and Ruth Inger Agorio, Decedent's spouse, as the primary beneficiary.  *Id.* at 3,

7   ¶ 11.

8       On or about April 6, 1990, Plaintiff received an Absolute Assignment and Transfer of Ownership

9   Form executed by Decedent which transferred ownership of the Policy to the Enrique Agorio, M.D.,

10  MPH, A Medical Corporation Retirement Trust.  *Id.* at 3, ¶ 12.  Additionally, on the same day,

11  Plaintiff received a Change in Beneficiary Designation executed by Decedent which changed the

12  beneficiary to the Enrique Agorio, M.D., MPH, A Medical Corporation Retirement Trust.  *Id.*

13  Accordingly, the Policy owner and beneficiary were changed to the Enrique Agorio, M.D., MPH, A

14  Medical Corporation Retirement Trust.  *Id.* at 4, ¶ 12.

15      Plaintiff alleges that, upon information and belief, the Enrique Agorio, M.D., MPH, A Medical

16  Corporation Retirement Trust (the "Trust"), maintained plan funds for the Enrique Agorio, M.D.,

17  MPH, A Medical Corp. Profit Sharing Plan, which is believed to have been an ERISA plan.  *Id.* at 4,

18  ¶ 13.

19      Decedent died on June 20, 2011.  *Id.* at 4,  ¶ 14.  At the time of death, the Policy owner

20  and beneficiary were the Enrique Agorio, M.D., MPH, A Medical Corporation Retirement Trust.  *Id.*

21  at 4, ¶ 15.  But, the Policy provides that if "no named beneficiary is living when the insured dies, the

22  proceeds will be paid to the owner or the owner's estate."  *Id.*

23      After Decedent died, Plaintiff received a claim for the Policy death benefit from Ruth Inger

24  Agorio, individually, as the widow of Decedent.  *Id.* at 4, ¶ 16.  Ms. Agorio also stated that the Trust

25  was dissolved in 2005.  *Id.* at 4, ¶ 17.  Ms. Agorio claims that she and Decedent intended for Ms.

26  Agorio to be the named beneficiary after the Trust was allegedly dissolved.  *Id.*  Ms. Agorio also

27  claims that she and Decedent had paid the premiums for the Policy after the Trust was allegedly

28  dissolved.  *Id.*

C 11-04404 LB
ORDER                                        2

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Plaintiff claims that it could not determine as a matter of law that the Trust had been dissolved,

2    that the Trust no longer had legal claim to the Policy death benefit as the named beneficiary and

3    owner, or that other beneficiaries or governmental entities have claims to the Policy benefits through

4    the Trust. *Id.* at 4, ¶ 18.  It also claims that it could not determine as a matter of law that there are no

5    plan members or beneficiaries of the Enrique Agorio, M.D., MPH, A Medical Corp. Profit Sharing

6    Plan, having a legal claim to the Policy death benefit. *Id.*  Additionally, Plaintiff was not able to

7    determine as a matter of law if the Estate of Enrique Agorio may have a claim to the Policy death

8    benefit as a beneficiary of the Trust. *Id.* at 4-5, ¶ 18.  And Ms. Agorio, individually, made a claim

9    for the Policy death benefit. *Id.* at 5, ¶ 19.

10    Given these issues, Plaintiff claims that it might be subject to multiple liability with respect to

11    the proceeds of the Policy. *Id.* at 5, ¶ 20.  Plaintiff further claims that the claims are adverse and

12    conflicting. *Id.* at 5, ¶ 21.  Thus, Plaintiff claims to be in the position of an innocent stakeholder

13    faced with the possibility of multiple liability under the Policy. *Id.*  Plaintiff does not claim any

14    interest in the Policy proceeds which Plaintiff claims that it has been willing to deliver to the person

15    or persons entitled to the funds. *Id.* at 5, ¶ 22.  Plaintiff further claims that it has not colluded with

16    any of the parties concerning the matters of this cause but, instead, filed the complaint to avoid

17    multiple liability and unnecessary suits and costs incidental to them. *Id.* at 5, ¶ 23.

18    Pursuant to this court's order granting Plaintiff's Motion to Deposit Funds (ECF No. 19),

19    Plaintiff deposited the entire amount of $605,013.70 that is subject to the claims at issue in this

20    lawsuit.  Motion, ECF No. 25 at 7.  Plaintiff claims no further interest in the funds and now seeks

21    discharge from all future liabilities. *Id.*  Plaintiff also seeks recovery of $45,111.24 in attorneys'

22    fees for work related to the interpleader action. *Id.* at 3.

### III.  LEGAL STANDARDS

#### A.  Discharge of Stakeholders in Interpleader Actions and Recovery of Attorneys' Fees

25    As an initial matter, the court determines whether the requirements for rule or statutory

26    interpleader action have been met by determining if there is a single fund at issue and whether there

27    are adverse claimants to that fund. *See Mack v. Kuckenmeister*, 619 F.3d 1010, 1023 (9th Cir.

28    2010).  Once this determination has been made, the federal interpleader statute presupposes that a

1  disinterested plaintiff who deposits the entire disputed fund with the court may be completely

2  discharged from the litigation, leaving the remaining claimants to resolve their dispute.  *See* 28

3  U.S.C. § 2361 ("Such district court shall hear and determine the case, and may discharge the

4  plaintiff from further liability . . . .").

5  "Generally, courts have discretion to award attorney fees to a disinterested stakeholder in an

6  interpleader action."  *Abex Corp. v. Ski's Enterprises, Inc.*, 748 F.2d 513, 516 (9th Cir. 1984).

7  **IV.  DISCUSSION**

8  **A.  Discharge of Stakeholder in Interpleader Action**

9  In determining whether to discharge a stakeholder in an interpleader action, the court must first

10  assess whether the stakeholder has the right to interplead.  The plaintiff must demonstrate that an

11  interpleader is justified.  And, although Defendants do not contest Plaintiff's request for discharge,

12  their arguments regarding whether Plaintiff is entitled to attorneys' fees touches on the underlying

13  merits of the interpleader action.  In its essence, the debate in this case is whether there are adverse,

14  conflicting claims to the funds.  *See Libby, McNeill, and Libby v. City Nat. Bank*, 592 F.2d 504, 507

15  (9th Cir. 1978) ("[A] basic jurisdictional requirement of a statutory interpleader action is that there

16  be 'adverse claimants' to a particular fund.").

17  As set forth above, Plaintiff explained why it considered itself to be facing potential adverse,

18  conflicting claims.  *See* Complaint, ECF No. 1 at 4-5, ¶¶ 20-21.  Defendants counter that Ms. Agorio

19  provided Plaintiff with documentation that established that there was only one claimant.  Opposition,

20  ECF No. 26 at 3.  Specifically, Defendants claim that Ms. Agorio provided proof that the Plan and

21  Trust were terminated and that all of the beneficiaries had received their distributions and executed

22  the proper paperwork to release any claims.  *Id.*  Plaintiff responds that Ms. Agorio had different

23  roles and, in fact, made different demands regarding the distribution of the funds to the various

24  claimants.  Reply, ECF No. 27 at 3.  Additionally, Plaintiff calls into question the sufficiency of the

25  documentation that Ms. Agorio provided to establish the termination of the Trust and the

26  distributions to the Plan beneficiaries.  *Id.* at 3-5.

27  In *Minnesota Mutual Life Insurance Co. v. Ensley*, 174 F.3d 977 (9th Cir. 1999), the plaintiff

28  issued a policy insuring the life of James Ensley.  174 F.3d at 979.  The policy originally named

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   James's wife Laura Ensley as the beneficiary. *Id.* Subsequently, James changed the beneficiary

2   designation from Laura to his brother, Donald Ensley. *Id.* at 980. After James's death, Donald

3   claimed the insurance proceeds. *Id.* The plaintiff filed a statutory interpleader action naming

4   Donald and Laura as defendants. *Id.* After the plaintiff filed the interpleader action, Laura filed a

5   claim for the proceeds. *Id.* The district court granted summary judgment in favor of Laura. *Id.*

6   Donald then appealed, arguing that the lower court lacked jurisdiction because only one claimant

7   had come forward at the time of the filing the action. *Id.* The Ninth Circuit found that the district

8   court did not err by finding interpleader jurisdiction because "[t]he court's jurisdiction under the

9   interpleader statute extends to potential, as well as actual, claims." *Id.* (citing sources).

10      On the other hand, "an asserted adverse claim may be so wanting in substance that interpleader

11   under the statute may not be justified." *New York Life Ins. Co. v. Lee*, 232 F.2d 811, 812 (9th Cir.

12   1956). While the Ninth Circuit has also counseled that the court should not look to the merits of the

13   claims before determining the propriety of the interpleader, *see Mack*, 619 F.3d at 1024,  the

14   principle articulated in *Lee* is particularly acute where there are not asserted adverse claims but

15   merely potential adverse claims. And some courts have denied interpleader where there is a single

16   claimant to a fund and any potential claimants affirmatively disavow their interest in the fund. *See,*

17   *e.g.*, *Dunbar v. United States*, 502 F.2d 506, 510-11 (5th Cir. 1974); *cf. Libby*, 592 F.2d at 508 n.4

18   ("Indeed, even had other defendants in the interpleader action made initial claims and then

19   withdrawn them, there would still be a question whether the district court had jurisdiction.").

20      This case presents a close case given that Plaintiff did not establish that it had a basis of

21   knowledge for believing that claimants other than Ms. Agorio might emerge and Ms. Agorio –

22   despite her various roles – ultimately appears to be the sole claimant and has communicated the lack

23   of conflict between the putative defendants with regard to the funds. However, the court finds that

24   the case just barely falls within the contours of *Ensley* and that the potential adverse claims

25   identified by Plaintiff were not complete shams because – at the time of the filing of the complaint –

26   the beneficiary designation was the Trust but Plaintiff had competing claims by Ms. Agorio

27   individually and also on behalf of the Estate. While it might have been wiser for Plaintiff to devote

28   resources to making certain factual determinations and giving Defendants time to clear up any

UNITED STATES DISTRICT COURT
For the Northern District of California

1  potential disputes, the court finds that an interpleader action is legally permissible in the

2  circumstances before it.

3    Turning to the issue of discharge, again, Defendants do not contest Plaintiff's request.  And

4  discharge is proper because Plaintiff is a disinterested party that has deposited the full amount of the

5  sought-after funds with the court.  28 U.S.C. § 2361.

6  **B.  Request for Recovery of Attorneys' Fees**

7    "The amount of fees to be awarded in an interpleader action is committed to the sound discretion

8  of the district court."  *Trustees of Directors Guild of America-Producer Pension Benefits Plans v.*

9  *Tise,* 234 F.3d 415, 426 (9th Cir. 2000).  The Ninth Circuit recognizes that the trial court has

10  discretion to grant or deny fees based on the specific factors in each individual case.  *San Rafael*

11  *Compania Naviera, S. A. v. American Smelting & Refining Co.*, 327 F.2d 581, 587 (9th Cir. 1964).

12  However, the court cannot grant fees incurred in asserting an interest in the deposited funds on

13  behalf of the interpleader plaintiff.  *Id.*  Also, recoverable fees are appropriately limited to such

14  actions as "preparing the complaint, obtaining service of process on the claimants to the fund, and

15  preparing an order discharging the plaintiff from liability and dismissing it from the action."  *Tise*,

16  234 F.3d at 426-27.

17    Courts outside of the Ninth Circuit have denied attorneys' fees where the stakeholder is an

18  insurance company because competing claims are part of the ordinary course of business for an

19  insurance company and an interpleader action should not be utilized to transfer these ordinary

20  business expenses to the claimants.  *See, e.g.*, *Aetna U .S. Healthcare v. Higgs*, 962 F.Supp. 1412,

21  1414-15 (D. Kan 1997); *Sun Life Assurance Co. of Canada v. Thomas*, 735 F.Supp. 730, 733 (W.D.

22  Mich. 1990). The Ninth Circuit has not barred the recovery of attorneys' fees where the stakeholder

23  is an insurance company, but it has noted that attorneys' fees awards to a disinterested stakeholder

24  are "typically modest."  *Tise*, 234 F.3d at 427.

25    The rationale for permitting the recovery of fees is that it would be inequitable to make the

26  disinterested stakeholder bear the expense of guarding against vexatious and multiple litigation and

27  the interpleader action benefits the claimants by facilitating an early determination regarding

28  ownership of the claimed funds.  *Schirmer Stevedoring Co., Ltd. v. Seaboard Stevedoring Corp.*, 306

UNITED STATES DISTRICT COURT
For the Northern District of California

1   F2d 188, 190 (9th Cir. 1962).  On the other hand, "there is an important policy interest in seeing that

2   the fee award does not deplete the fund at the expense of the party who is ultimately deemed entitled

3   to it." *Tise*, 234 F.3d at 427.

4       With these considerations in mind, the court undertakes a lodestar analysis to guide its

5   determination regarding the appropriate amount of attorneys' fees and costs. *See Prudential Ins. Co.*

6   *of America v. Estate of Norva*, No. CV 07-00616 SOM-LEK, 2009 WL 5126340, at *4-*6 (D.Haw.

7   Dec. 28, 2009).

8       **1. Hourly Rates**

9       As to the requested hourly rate, the fee applicant has the burden of producing satisfactory

10  evidence that the requested rates are in line with those prevailing in the community for similar

11  services of attorneys of reasonably comparable skill, experience, and reputation. *Blum v. Stenson*,

12  465 U.S. 886, 895 n.11 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Affidavits of the

13  plaintiff's attorney and other attorneys regarding prevailing fees in the community, and rate

14  determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are

15  satisfactory evidence of the prevailing market rate. *United Steelworkers of Am. v. Phelps Dodge*

16  *Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  An attorney's declaration regarding the reasonableness of

17  his or her own rate, standing alone, is insufficient to meet the fee applicant's burden. *See Wren v.*

18  *RGIS Inventory Specialists*, No. C–06–05778 JCS, 2011 WL 1230826, (N. D. Cal. Apr. 1, 2011)

19  (citing *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987)); *APL Co. Pte. Ltd. v. UK*

20  *Aerosols Ltd.*, No. C 05-00646 MHP, 2010 WL 347667, at *4 (N. D. Cal. Sept. 3, 2010) (same).

21      Here, Plaintiff requests hourly rates ranging from $320 per hour to $610 per hour for the four

22  attorneys involved.  Scherz Decl., ECF No. 25-1 at 2-3.  Only Plaintiff's counsel, Carl Scherz and

23  Sally Mimms, provided declarations asserting the reasonableness of his requested hourly rates and

24  that of the other attorneys who worked on the matter for Plaintiff.  *Id.*; Mimms Decl., ECF No. 25-2

25  at 2.  Such affidavits generally do not meet Plaintiff's burden to establish the reasonableness of the

26  requested hourly rates.

27      In a case involving a case of similar (or potentially less) complexity, a court in this district

28  considered $190 hourly rate reasonable for an attorney with roughly similar credentials–albeit at a

C 11-04404 LB
ORDER                                        7

1   smaller firm and with fewer years of experience than some of Plaintiff's counsel. *Sun Life Assur.*

2   *Co. of Canada, U.S. v. Chirolo*, No. C 08-03465 WHA, 2009 WL 113009, at \*5 (N.D. Cal. Jan. 16,

3   2009).

4       At the hearing, Ms. Mimms explained that Plaintiff did not submit additional documentation

5   because a lodestar analysis is not mandatory in interpleader cases.  This point is well-taken.

6       Still, the court must have a basis beyond the word of the attorneys in the case.  Here, the court

7   draws on the precedent from other courts, its knowledge of the prevailing community rates, and its

8   evaluation of the quality of the work performed by Plaintiff's counsel to assign a rate of $350 per

9   hour. *See Columbus Life Ins. Co. v. Hill*, No. CIV. 2:09-cv-0947 FCD DAD, 2010 WL 3717285, at

10  \*6 (E.D. Cal. Sept. 16, 2010) (awarding hourly rate of $250 per hour for lawyer from Reed Smith

11  LLP in a similar case as the market rate for Sacremento); *see also Ingram v. Oroudjian*, 647 F.3d

12  925, 928 (9th Cir. 2011) (holding that district court did not abuse its discretion by relying, in part, on

13  its own knowledge and experience in setting an hourly rate).

14      **2.  Hours Expended**

15      As to the requested hours, a  fee applicant must show that she exercised billing judgment in the

16  preparation of the attorney's fee application and that the requested hours were reasonably expended

17  (i.e., not duplicative, unproductive, excessive or otherwise unnecessary). *Hensley*, 461 U.S. at 434.

18  Detailed billing records – e.g., hourly invoices – are generally required to assist the court in its

19  determination of reasonable fees. *See, e.g.*, *Entm't Research Grp., Inc. v. Genesis Creative Grp.,*

20  *Inc.*, 122 F.3d 1211, 1232 (9th Cir. 1997) ("[T]he district court abused its discretion by not requiring

21  . . . original time records and billing statements."); *Hensley*, 461 U.S. at 433 ("Where the

22  documentation of hours is inadequate, the district court may reduce the award accordingly.").

23      Here, Plaintiff provided hourly invoices, requesting $45,111.24 in fees and costs for 85.5 hours

24  of work. *See* Motion, ECF No. 25 at 14; Scherz Decl., ECF No. 25-1 at 7-19.  As Mimms

25  summarized in her declaration, these hourly invoices show that Plaintiff's counsel expended

26  approximately $17,000 in basic case preparation and the filing of the complaint.  Mimms Decl., ECF

27  No. 25-2 at 4. Approximately $16,500 was incurred in work related to the motion to deposit funds.

28  *Id.*  And approximately $8,900 was incurred and $2,000 was anticipated to be incurred in work

UNITED STATES DISTRICT COURT
For the Northern District of California

C 11-04404 LB
ORDER                                      8

UNITED STATES DISTRICT COURT
For the Northern District of California

1   related to the motion for discharge and attorneys' fees.  *Id.*  In total, Plaintiff estimates that its

2   attorneys spent a total of 85.5 hours working on the matter.  Plaintiff also requests $20,000 in

3   attorneys' fees to address appellate issues, if Defendants appeal the award of attorneys' fees.

4   Motion, ECF No. 25 at 14.

5       This court finds that 85.5 hours far exceeds what was required in this case and for the quality of

6   the work performed.  First, Plaintiff is an insurance company and this case does not present highly

7   unique or complex issues.  Second, the amount of hours requested is not well correlated with the

8   ultimate quality of Plaintiff's submissions.  For example, Plaintiff provided very cursory and

9   conclusory explanations for its determination that there were conflicting, adverse claims until its

10  reply brief.  Also, all of Plaintiff's papers included minimal case support or legal analysis.  Third,

11  Plaintiff spent time on unnecessary tasks.  For example, although no opposition to the motion for

12  leave to deposit funds was filed, Plaintiff requests compensation for more than four hours of work

13  spent on a reply brief.  *See* Scherz Decl., ECF No. 25-1 at 14-15.

14      Given these factors, the court finds that only eight hours were reasonable expended on the

15  matter.  The court's determination is buttressed when considering that, ultimately, there appear to be

16  no conflicting claims (and, therefore, Defendants received no benefit from this action)[2] and the

17  requested amount would, in absolute terms, significantly deplete the fund.

18      As to the $20,000 in attorneys' fees to address appellate issues, the court declines to award any

19  fees for costs not actually incurred or costs solely related to the pursuit of Plaintiff's interest (i.e., the

20  recovery of its fees).  *See Schirmer Stevedoring Co. Ltd.,* 306 F.2d at 194 ("But if there is a contest

21  between plaintiff and the interpleaded parties, either as to the correctness of the amount deposited or

22  *as to any interest of plaintiff in the fund*, the court may not, in the absence of special circumstances,

23  award attorney fees for the services of his attorneys in connection with such contest." (emphasis

24  added)).

25

26      [2]  The court notes that Plaintiff's maintenance of the case appears driven by a disagreement
27  with Defendants about the amount of fees to which it is entitled and not about the resolution of
    adverse, conflicting claims to the funds.  *See* Reply, ECF No. 27 at 7.  As noted above, the Ninth
28  Circuit has questioned *in dicta* whether the trial court retains jurisdiction in cases where there is no
    longer a dispute amongst any claimants.  *See Libby*, 592 F.2d at 508 n.4.

C 11-04404 LB
ORDER                                                          9

**3.  Costs**

"In an interpleader action, it is within the court's discretion to award costs to the stakeholder." *Gelfgren v. Republic Nat. Life Ins. Co.*, 680 F.2d 79, 82 (9th Cir. 1982).  Here, Plaintiff requests $781 in costs.  Plaintiff's Motion, ECF No. 25 at 12.  Plaintiff's billing records show that $782.49 in costs were incurred for research, filing, and service expenses.  Scherz Decl., ECF No. 25-1 at 12, 19.  Defendants raised no objection to the costs, and the court finds them to be reasonable.

## V.  CONCLUSION

For the foregoing reasons, the court **GRANTS** Plaintiff's motion for discharge and the recovery of attorneys' fees.

Plaintiff is released and discharged from all liability, including but not limited to liability to Ruth Inger Agorio, Individually, Ruth Inger Agorio, Trustee for the Enrique Agorio, M.D., MPH, a Medical Corporation Retirement Trust, Ruth Inger Agorio, Executrix of Estate of Enrique Francisco Agorio, and Ruth Inger Agorio, Trustee of the Enrique Agorio, M.D., MPH, a Medical Corp. Profit Sharing Plan, the beneficiaries of the Enrique Agorio, M.D., MPH, a Medical Corporation Retirement Trust, the heirs and beneficiaries of the Estate of Enrique Francisco Agorio, and the beneficiaries and participants of the Enrique Agorio, M.D., MPH, a Medical Corp. Profit Sharing Plan, on account of all matters relating to Policy No. 002783969 originally issued by Fidelity Union Life Insurance Company, including but not limited to payment of the death benefit and handling of competing claims.  As to Plaintiff, this is a final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

///

///

///

///

///

///

///

///

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Applying the hourly rate of $350 per hour to the eight hours that Plaintiff's counsel reasonably

2    expended, the court awards $2,800 to Plaintiff for the attorneys' fees.  The court also awards $781 in

3    costs for a total of $3,581.  *See generally Tise*, 234 F.3d at 428 (observing that the award of $3,000

4    in fees "in line with those commonly granted to interpleader plaintiffs").  The Court Clerk is hereby

5    ordered to pay this amount from the registry of the Court to Plaintiff.

6        This disposes of ECF No. 25.

7    **IT IS SO ORDERED.**

8    Dated: February 10, 2012



9                                                    LAUREL BEELER
                                                     United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

C 11-04404 LB
ORDER                                    11